[Civ. No. 21421.   Second Dist., Div. Two.   June 27, 1956.]

BEN HERMAN, Appellant v. HARRY BLACKMAN
et al., Respondents.

Marvin Segal and Chester L. Smith for Appellant.

Seymour Gold and Mitchell & Gold for Respondents.

FOX, J.—In his complaint plaintiff alleges that on or about October 22, 1953, he entered into an oral agreement to sell certain stock that he owned in the NBH Corporation and in Lord's Appliance Company, Inc., to defendant Harry Blackman, Al Haytin and Sam Nassi for $15,000. The contemplated source of these funds was as follows: Defendant Blackman $5,000; Haytin $800; Nassi $800; and the remaining $8,400 was to come from funds that these two corporations owed Blackman, Haytin and Nassi. Each of these parties had a one-third interest in the funds owed them by the corporations.* None of the parties made any payments to plaintiff on account of this alleged purchase. On November 4, 1953, plaintiff received a check drawn on the account of Lord's Appliance Company, Inc., in the sum of $6,500 and another check in the amount of $1,900 drawn on the account of the NBH Corporation. These checks were signed

---

*Nineteen hundred dollars was due from the NBH Corporation to the three men, and $6,500 was due them from Lord's Appliance Company, Inc.

by Al Haytin and Zarmond Goodman, who were apparently authorized to sign checks on behalf of each corporation. Plaintiff immediately cashed both checks. Two days later Norman Herman, son of plaintiff, took to defendant Blackman a written document setting forth plaintiff's understanding of the alleged agreement which was claimed to have been reached at a dinner meeting on October 22, 1953. Blackman refused to sign the document..

It was at this time that defendant Blackman learned that the above mentioned checks had been issued and delivered to plaintiff. Blackman immediately got in touch with Haytin and Goodman, who signed these checks, and protested their action.

On January 13, 1954, plaintiff filed suit against Blackman and his wife to recover the $5,000 which he alleged Blackman owed on his oral agreement to purchase the stock. Blackman filed an answer in which he denied making any agreement to purchase said stock. He also filed a cross-complaint in which he alleged that the payment to plaintiff of the $8,400 from the funds of the two corporations was "wrongful and without authority" and that he was entitled to one-third thereof, and prayer for judgment against the cross-defendant Herman for $2,800.

The court found there was no agreement between plaintiff and Blackman for the purchase and sale of said stock and accordingly rendered judgment "that the plaintiff take nothing by his complaint," and that Blackman have judgment against Herman on the cross-complaint for $2,800.

Plaintiff does not challenge the sufficiency of the evidence to sustain the findings nor does he otherwise attack the correctness of the court's findings and judgment on the complaint. It is therefore established by the court's decision on the complaint that there was no agreement on the part of defendant Blackman to purchase plaintiff's stock. ■ The only basis upon which plaintiff Herman could have any right to this $2,800 is on the theory that there was an agreement between the parties for the purchase and sale of the stock. Since the court found there was no such agreement the plaintiff is not entitled to this money.

■ It must be remembered that this was a purported transaction between Herman and Blackman. Any obligation that might have been created would have been Blackman's personal obligation and not that of either of the cor-

porations; neither of them, of course, was buying the stock. The checks that were issued by the corporations were not in payment of any obligation that either of them had incurred in the course of their regular business. They were issued without authorization and apparently in the mistaken belief that a binding contract had been entered into between Herman and Blackman. Blackman's interest in these checks could only be charged against him in the event he authorized their issuance. He testified he made no such authorization. That is sufficient to sustain the finding that the plaintiff "wrongfully received" said $2,800.

Plaintiff argues that because Haytin and Goodman were authorized by the respective corporations to sign checks, therefore the payments to plaintiff were proper. This, of course, would be true if the checks were in payment of obligations which the respective corporations owed to plaintiff but, as previously pointed out, these checks were not issued as a result of any business transaction between plaintiff and either of them. The fact that these men were authorized to sign checks for the respective corporations did not authorize them to pay out funds that were owed Blackman to an unauthorized person such as plaintiff.

Plaintiff argues that Blackman ratified the payment of the $8,400. He asserts that Blackman's "entire conduct" is perfectly consistent with his acceptance and ratification of the payment of the $8,400. The record does not support this contention. Blackman refused to sign the document which plaintiff's son brought to him on November 6th, which purported to incorporate the plaintiff's understanding of what had transpired at the dinner-meeting of October 22d. This clearly justifies the inference that he did not understand that any such purported agreement of the sale of stock had been made. It was then that he learned that the two checks above mentioned had been issued. He immediately protested their issuance to both Haytin and Goodman, who signed them. His "entire conduct" is therefore entirely inconsistent rather than consistent with ratification.

Plaintiff contends that the payments in this proposed deal were "divisible," and that therefore he is entitled to keep the $8,400 even though he is not entitled to collect the other $5,000 from Blackman. The record is clear that this was one transaction by which plaintiff undertook to sell his entire stock in these two corporations to Blackman and his associates for $15,000. His complaint is based upon that theory.

The proposed transaction was an entire deal as between Herman, the seller, and Blackman and his associates as purchasers. The suggested arrangement by which Blackman and his associates would pay different amounts was simply a matter of convenience among them and a practical arrangement by which they expected to raise the total purchase price. There was no suggestion that plaintiff was selling only a portion of his stock for a part of the total price.

While it is clear that Herman is not entitled to retain the $2,800 here involved, it does not follow that cross-complainant Blackman is entitled to recover it. The money that was paid to Herman by these two corporations was from their checking accounts or general funds and not from any special account or special fund that had been set apart as belonging to Blackman and his associates. It is true that the books of the corporations showed an indebtedness to Blackman, but that was simply a debtor-creditor relation. The corporations did not have specific funds which belonged to Blackman. The title to the money paid to Herman was, prior to payment, in the corporations. The payments, as we have shown, were unauthorized by Blackman. These corporations simply erroneously paid the $2,800 to Herman. The cause of action to recover the money was in the corporations. Blackman has no assignment of the corporations' claims. He does not own the causes of action on which judgment was rendered. It was therefore improper to render judgment in his favor on the cross-complaint.

The ruling herein does not preclude the corporations from taking the necessary steps in this or another action to recover the $2,800 here in question.

That portion of the judgment based on the complaint is affirmed; that portion of the judgment based on the cross-complaint is reversed. Plaintiff is to recover his costs on appeal.

Moore, P. J., and Ashburn, J., concurred.